UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

STEPHANIE BETHEA,

                    Plaintiff,                08 Civ. 2789

          -against-                           OPINION

JOHN E. POTTER, Postmaster General,
New York Metro Area, U.S. Postal
Service, and CLARICE TORRENCE,

                    Defendants.

------------------------------------X

A P P E A R A N C E S:


          Pro Se

          STEPHANIE BETHEA
          258 West 117th Street, #41-E
          New York, NY   10026

          Attorneys for Defendants

          PREET BHARARA
          United States Attorney for the
            Southern District of New York
          86 Chambers Street, Third Floor
          New York, NY   10007
          By:  Joseph N. Cordaro, Esq.

**Sweet, D.J.**

Defendant John E. Potter, Postmaster General of the United States ("Defendant," or the "Postal Service") has moved for summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure to dismiss the amended complaint of plaintiff pro se Stephanie Bethea (the "Plaintiff" or "Bethea") alleging discrimination on the basis of mental disability and unequal terms and conditions of employment; retaliation; and hostile work environment. Upon the facts and conclusions set forth below, the motion is granted, and the amended complaint dismissed.

Bethea has had a long and difficult history with Postal Service since 1985 and has had back and mental health problems.  However, she has not established that her discharge in 2006 and her refusal to appear for a pre-disciplinary interview constituted violations of the applicable law by the Postal Service.

**Prior Proceedings**

This action was commenced on March 17, 2008.  The amended complaint was filed on July 13, 2009, and alleges

1

claims for (i) discrimination on the basis of her "need of psych meds" and unequal terms and conditions of employment, (ii) retaliation, and (iii) hostile work environment. Discovery proceeded.

The instant motion was filed on October 16, 2009 together with notice to pro se defendant and was marked fully submitted on December 22, 2009.

**FACTS**

The facts are set forth in the Defendant John E. Potter's Statement of Undisputed Material Facts Pursuant to Local Civil Rule 56.1(a) (the "Defendant's Statement"). Bethea has submitted a 30-page opposition requesting discovery and asserting the existence of factual dispute. No appropriate requests for discovery have been denied and the claim of factual dispute is conclusory.  The Defendant's Statement is unrebutted as to the material facts.

Bethea commenced employment with the Postal Service on December 21, 1985, as a flat-sorter operator. She initially worked at the USPS FDR Station located in New

York, New York.  After her service at the FDR Station,
Plaintiff was reassigned to the USPS Cathedral Station in
New York, New York, as a clerk.

Plaintiff requested a transfer from the FDR
Station because she was working the night shift and wished
to bid for a day shift.  Postal employees who bid for day
shifts are not guaranteed to receive a day shift for their
next assignment.  Plaintiff did not receive a day shift at
the Cathedral Station. Plaintiff requested a transfer from
the Cathedral Station because she was still working at
night, and she wished to bid for a day position once again.

After her service at the Cathedral Station,
Plaintiff was reassigned to the USPS Hell Gate Station in
New York, New York, as a distribution window clerk.  When
Plaintiff was transferred to the Hell Gate Station, she
received a day shift.

Plaintiff requested a transfer from the Hell Gate
Station because of disagreements with her supervisor, Ms.
Mills, over the cashing of a money order and days off that
Plaintiff wished to take during her grandfather's terminal
illness.  Plaintiff was reassigned to the USPS Madison

3

Square Station in New York, New York, as a window
distribution clerk.  While employed at the Madison Square
Station, Plaintiff received a letter of warning for
lateness.

After her service at the Madison Square Station,
Plaintiff was reassigned to the USPS Columbus Circle
Station in New York, as a window distribution clerk.
Plaintiff requested a transfer from the Madison Square
Station because she felt that the station manager was
causing her direct supervisor to harass her and treat her
differently from other employees.  Plaintiff remained at
the Columbus Circle Station until her removal from the
Postal Service on September 29, 2006.

**Back Complaints**

When Plaintiff joined the Postal Service, her
position as a flat-sorter operator at the FDR Station
required her to lift heavy tubs.  Plaintiff visited with a
physician with complaints about her back during her
employment at the FDR Station.  The physician did not
diagnose an injury to Plaintiff's back.  While she was
employed at the FDR Station, Plaintiff never received a

4

note from a physician indicating that she was unable to perform lifting duties.  Plaintiff's position as a window distribution clerk at the Columbus Circle Station required her to lift packages weighing up to 70 pounds.

Plaintiff injured her back on June 24, 2003, while she was employed at the Columbus Circle Station.  As a result of her back injury, Plaintiff was out of work for more than one month, but less than six months.

On or about October 9, 2003, the Postal Service tendered Plaintiff an Offer of Modified Assignment (Limited Duty) indicating that her lifting duties were not to exceed 20 pounds.  Occasionally, Plaintiff would see a physician who would direct that her lifting restriction be raised or lowered.  On some occasions, the physician would reduce the limit to 10 pounds; on others, the physician would raise the limit to 30 pounds.  The Postal Service obeyed the physician's orders with respect to Plaintiff's lifting restrictions.

On March 10, 2004, Plaintiff's supervisor Marlene Granderson ("Granderson") issued Plaintiff a Notice of Removal.  Plaintiff agreed that the 2004 Notice of Removal

5

was justified based on the information that Granderson had at the time she issued it.  In a settlement dated April 28, 2004, the 2004 Notice of Removal was modified to a Notice of 14-day Suspension.

In a post-mediation settlement agreement dated June 2, 2004, Plaintiff accepted that Granderson's actions in issuing the 2004 Notice of Removal were "just and proper based upon the information available to her at the time." The 2004 Notice of Removal was ordered expunged, and Plaintiff was compensated for two weeks of lost wages.  The agreement put Plaintiff on notice that "in the event of future absence . . . [she] must provide [Granderson] with neces[sary] information in a timely manner and in accordance with postal polic[y]."  Both Plaintiff and Granderson executed the settlement agreement of June 2, 2004.

**Depression**

Plaintiff began to see a mental health therapist in 1997.  After 1997, Plaintiff took the medications Trazodone, Paxil, and Zyprexa for mental health reasons.

6

On November 5, 1999, Dr. Michael Grunebaum ("Dr. Grunebaum") indicated on a Family and Medical Leave Act Certification form ("FMLA Certification Form") that Plaintiff was incapacitated and unable to perform her job functions until December 1, 1999.

On December 13, 2001, Dr. Grunebaum indicated on a FMLA Certification Form that Plaintiff was able to perform the functions of her position.  No incapacitation was noted.

On November 4, 2002, Dr. Grunebaum indicated on a FMLA Certification Form that Plaintiff was able to perform the functions of her position.  Dr. Grunebaum specified that Plaintiff was not incapacitated.

Plaintiff's depression affected her interactions with her co-workers in that she isolated herself from her colleagues, but she performed her job duties to the best of her ability.

On August 9, 2006, Plaintiff visited with Dr. Jan Roda of the Metropolitan Center for Mental Health for a counseling session.  Dr. Roda noted that Plaintiff suffered

from major depression but that he was "not recommending any medication."

## **Removal from Service**

On June 20, 2006, Granderson held a pre-disciplinary interview with Plaintiff concerning her habitual lateness.  During the pre-disciplinary interview of June 20, 2006, Granderson noted that Plaintiff had been given an oral discussion of her attendance in April 2006, and that she had accumulated eight more latenesses between May 19 and June 14, 2006.  Plaintiff said nothing in defense of her tardiness.  At the conclusion of the pre-disciplinary interview of June 20, 2006, Granderson suggested that Plaintiff might be covered for her latenesses under the Family and Medical Leave Act ("FMLA") and gave Plaintiff the appropriate paperwork to submit to the FMLA office.

On June 22, 2006, at approximately 5:44 p.m., Postal Service employee Priscilla Overby ("Overby"), who was stationed at the Columbus Circle Station along with Plaintiff, telephoned the USPS Postal Inspector's Office to

report that Plaintiff had verbally threatened her that afternoon at approximately 5:30 p.m.

On June 23, 2006, Postal Inspectors contacted Granderson and advised her to contact the Postal Service Department of Labor Relations ("Labor Relations") for instructions on how to proceed. Labor Relations advised Granderson to place Plaintiff on Emergency Placement. When Plaintiff reported for work on the morning of June 23, 2006, Granderson verbally directed her to leave immediately. Plaintiff initially refused Granderson's verbal directive because she wanted written notice that she was being placed in Emergency Placement. Plaintiff thereupon called 911, and a New York City Police Officer responded. The officer informed Plaintiff that she would have to follow up with federal authorities. Postal Inspectors arrived at the Columbus Circle Station at approximately 10:20 p.m.

On June 23, 2006, Postal Inspectors interviewed Granderson and Overby about the incident. Overby reported that Plaintiff had interrupted a conversation between Overby and another Columbus Circle employee, Charlene Archibald ("Archibald"). Overby reported that when she

9

said to Archibald, "That's what you get when you mind other people's business," Plaintiff yelled, "You make me mind my business" and "You have so much mouth.  That's all you got."  Overby further reported that Plaintiff said, "You just bring it on. You have so much mouth" and "I got something for you."  In addition to Granderson and Overby, Postal Inspectors interviewed Archibald and three other Columbus Circle Station employees.

On June 27, 2006, Granderson conducted a pre-disciplinary interview of Plaintiff in the presence of a union official.  Plaintiff denied making any threats to Overby.  After the interview concluded, Granderson ordered Plaintiff to return to work.  Plaintiff refused to return to work at that time.

On June 29, 2006, Granderson sent Plaintiff a letter in which she informed Plaintiff that she had been instructed to return to work and had not done so.  Granderson informed Plaintiff that she would be charged with Absence Without Leave until she returned to work.

On June 30, 2006, Granderson disapproved a Form 3971 Request for or Notification of Absence that Plaintiff

submitted for the period June 27, 2006 through June 30, 2006. Granderson noted that the Form 3971 was disapproved because of "excessive AWOL."

On July 12, 2006, Granderson conducted a second pre-disciplinary interview with Plaintiff. Granderson informed Plaintiff that her refusal to report to work between June 27 and June 30, 2006, inclusive, violated Section 665.15 of the Employee and Labor Relations Manual ("ELM"), which requires employees to obey the instructions of their supervisors. Granderson also informed Plaintiff that she had been late to work on July 6, July 7, and July 10, 2006, and that she had offered to change Plaintiff's tour on July 10, 2006. Plaintiff refused this offer with the response: "What is changing my tour going to do?"

On July 25, 2006, Granderson conducted a third pre-disciplinary interview with Plaintiff. Granderson gave Plaintiff another opportunity to relate her version of the events of June 22, 2006. Plaintiff responded: "You were there so what ever you want to write is OK, just give me a copy." Granderson asked again if Plaintiff would answer any questions. Plaintiff responded, "First of all nothing happened. This is a fabricated story. You were there with

11

Priscilla [Overby] so you know if anything happened.  This
is just harassment.  You continue on with your sickness."
Granderson advised Plaintiff that disciplinary action was
forthcoming, including possible removal from the Postal
Service.

On August 10, 2006, Granderson issued Plaintiff a
Notice of Removal informing her that she would be removed
from Postal Service employment on September 30, 2006.

Plaintiff's Notice of Removal indicated three
reasons from the removal:  (1) creating a hostile work
environment for another Postal employee; (2) absence
without official leave from June 27, 2006, through June 30,
2006; and (3) eleven incidences of lateness from May 26,
2006 through July 12, 2006.  The Notice of Removal was
executed by Granderson, concurring official J. Irizarry,
and union shop steward Kevin B. Walsh.

**Restoration and Refusal to Report**

Plaintiff filed a formal Equal Employment
Opportunity ("EEO") complaint on October 5, 2006,
concerning her removal from the Postal Service.  This

12

complaint contained no specific claims of discrimination or
retaliation.  Prior to her EEO complaint of October 5,
2006, Plaintiff had filed ten EEO claims dating back to
October 8, 1997.  By Acceptance of Investigation form dated
October 30, 2006, the Postal Service informed Plaintiff
that the scope of investigation would include "only"
"discrimination based on Retaliation (for prior EEO
activity) and Mental disability."  Plaintiff did not object
to the scope-of-investigation statement in the Acceptance
for Investigation of October 30, 2006, even though she had
seven days to do so.

On November 21, 2007, Equal Employment
Opportunity Commission ("EEOC") Administrative Law Judge
Nadine Lewis issued a final decision denying Plaintiff's
claims.

On May 29, 2008 while the instant action was
ongoing, arbitrator Sherrie Rose Talmadge issued a binding
decision reducing Plaintiff's removal to a 14-day
suspension, reinstating Plaintiff with the Postal Service,
and awarding Plaintiff back pay.

13

On June 2, 2008, the Postal Service informed Plaintiff that she was restored to duty.  Plaintiff wrote to the Postal Service on June 4, 2008, indicating that she was disabled "due to ongoing mental abuse" from the Postal Service.

On June 11, 2008, the Postal Service once again wrote a letter to Plaintiff and asked her to report to work.

On September 23, 2008, the Postal Service issued Plaintiff a warning letter directing her to submit satisfactory evidence supporting her absence from work. Plaintiff responded by letter dated September 27, 2008, with documentation pertaining to Social Security disability payments.

On October 1, 2008, the Postal Service issued a letter directing Plaintiff to appear for a pre-disciplinary interview.

On May 16, 2009, the Postal Service issued a letter requesting documentation for Plaintiff's absences.

On May 27, 2009, the Postal Service issued a
letter directing Plaintiff to appear for a pre-disciplinary
interview.

On July 27, 2009, the Postal Service issued a
letter requesting documentation for Plaintiff's absences.

After her removal from the Postal Service on
September 29, 2006, Plaintiff applied for employment with
amNewYork.  Plaintiff distributed newspapers for, and was
paid by, amNewYork.  Plaintiff also applied for a job with
the Princeton Review after her termination from Postal
Service employment.

**The Summary Judgment Standard**

Summary judgment is granted only where there
exists no genuine issue of material fact and the moving
party is entitled to judgment as a matter of law. Fed. R
Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317,
322-23 (1986); SCS Commc'ns, Inc. v. Herrick Co., 360 F.3d
329, 338 (2d Cir. 2004). The courts do not try issues of
fact on a motion for summary judgment, but, rather,
determine "whether the evidence presents a sufficient

15

disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986).

"The party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists and that the undisputed facts establish [its] right to judgment as a matter of law." Rodriguez v. City of New York, 72 F.3d 1051, 1060-61 (2d Cir. 1995). In determining whether a genuine issue of material fact exists, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Gibbs-Alfano v. Burton, 281 F.3d 12, 18 (2d Cir. 2002). However, "the non-moving party may not rely simply on conclusory allegations or speculation to avoid summary judgment, but instead must offer evidence to show that its version of the events is not wholly fanciful." Morris v. Lindau, 196 F.3d 102, 109 (2d Cir. 1999) (internal quotations omitted); Fletcher v. Atex, Inc., 68 F.3d 1451, 1456 (2d Cir. 1995) ("Finally, mere conclusory allegations or denials in legal memoranda or oral argument are not evidence and cannot create a genuine issue of fact

16

where none would otherwise exist." (internal quotations and citation omitted)). Summary judgment is appropriate where the moving party has shown that "little or no evidence may be found in support of the nonmoving party's case. When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." Gallo v. Prudential Residential Servs., L.P., 22 F.3d 1219, 1223-24 (2d Cir. 1994) (citations omitted).

Because the Plaintiff is pro se, the Court judges her pleadings by a more lenient standard than that accorded to "formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972). Proceeding pro se, however, "does not otherwise relieve [plaintiff] from the usual requirements of summary judgment." Fitzpatrick v. N.Y. Cornell Hosp., No. 00 Civ. 8594 (LAP), 2003 WL 102853, at *5 (S.D.N.Y. Jan. 9, 2003) (citing cases).

**The Requirements of the Rehabilitation Act of 1973**

The Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12100 et seq., does not apply to the United States

17

or a corporation wholly owned by the United States.  42

U.S.C. § 12111(5)(B)(i).  Postal Service employees must

instead bring suit for disability discrimination under the

Rehabilitation Act of 1973, 29 U.S.C. § 701 et seq., the

exclusive remedy for such cases.  See Ribera v. Heyman, 157

F.3d 101, 103 (2d Cir. 1998).  The Rehabilitation Act

provides, in relevant part:  "No otherwise qualified

individual with a disability . . . shall, solely by reason

of her or his disability, be . . . subjected to

discrimination . . . under any program or activity

conducted by . . . the United States Postal Service."  29

U.S.C. § 794(a).


        The evidentiary burden in Rehabilitation Act

cases is governed by the three-part scheme in McDonnell

Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973).  See

Reg'l Econ. Cmty. Action Program, Inc. v. City of

Middletown, 294 F.3d 35, 48 (2d Cir. 2002).  A plaintiff

bears the initial burden of proving a prima facie

discrimination claim by a preponderance of the evidence.

See Saint Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506

(1993).  Success on this front "gives rise to a presumption

of unlawful discrimination" and shifts the burden of

production to the defendant to "proffer a legitimate,

nondiscriminatory reason for the challenged employment
action." Woodman v. WWOR-TV, Inc., 411 F.3d 69, 76 (2d
Cir. 2005) (citation and internal quotation marks omitted).
"Any legitimate, non-discriminatory reason will rebut the
presumption triggered by the prima facie case." Fisher v.
Vassar College, 114 F.3d 1332, 1335-36 (2d Cir. 1997),
abrogated on other grounds by Reeves v. Sanderson Plumbing
Prods., Inc., 530 U.S. 133 (2000).  If the defendant makes
this production, "the presumption of discrimination drops
out . . . and the burden shifts back to the plaintiff, to
prove 'that the legitimate reasons offered by the defendant
were not its true reasons, but were a pretext for
discrimination.'" Roge v. NYP Holdings, Inc., 257 F.3d
164, 168 (2d Cir. 2001) (quoting Reeves, 530 U.S. at 143).


        As a prerequisite to suit under the
Rehabilitation Act, "a federal government employee must
timely exhaust the administrative remedies at his
disposal." Belgrave v. Pena, 254 F.3d 384, 386 (2d
Cir.2001) (citation and internal quotation marks omitted).
Exhaustion is a "precondition" to bringing suit under the
Rehabilitation Act, though not a "jurisdictional
requirement." Francis v. City of New York, 235 F.3d 763,
768 (2d Cir. 2000) (addressing Title VII claims).  In other

19

words, if the plaintiff has failed to exhaust, the Court

may consider whether grounds exist to set aside the

requirement, such as waiver, estoppels, or equitable

tolling.  See Zipes v. Trans World Airlines, Inc., 455 U.S.

385, 393 (1982).  Equitable tolling is an "extraordinary

measure," Veltri v. Building Serv. 32B-J Pension Fund, 393

F.3d 318, 322 (2d Cir. 2004), and its principles do not

extend to "a garden variety claim of excusable neglect,"

South v. Saab Cars USA, Inc., 28 F.3d 9, 12 (2d Cir. 1994)

(quoting Irwin v. Department of Veterans Affairs, 498 U.S.

89, 97 (1990)).


"The purpose of the notice provision, which is to

encourage settlement of discrimination disputes through

conciliation and voluntary compliance, would be defeated if

a complainant could litigate a claim not previously

presented to and investigated by the EEOC."  Miller v.

Int'l Tel. & Tel. Corp., 755 F.2d 20, 26 (2d Cir. 1985).

Accordingly, "[c]laims not raised in an EEOC

complaint . . . may be brought in federal court if they are

'reasonably related' to the claim filed with the agency."

Williams v. N.Y. City Housing Auth., 458 F.3d 67, 70 (2d

Cir. 2006) (quoting Butts v. City of N.Y. Dep't of Housing

Preservation & Dev., 990 F.2d 1397, 1401 (2d Cir. 1993)).

(complaint brought under the Age Discrimination in
Employment Act, 29 U.S.C. § 621 et seq.).  "A claim raised
for the first time in the district court is 'reasonably
related' to allegations in an EEOC charge 'where the
conduct complained of would fall within the scope of the
EEOC investigation which can reasonably be expected to grow
out of the charge of discrimination.'"  Holtz v.
Rockefeller & Co., 258 F.3d 62, 83 (2d Cir. 2001) (quoting
Butts, 990 F.2d at 1402).

**The Discrimination Claim on the Basis
of a Physical Disability is Dismissed**

          To the extent that Plaintiff has alleged that her
removal was the result of discrimination on the basis of
her back injury, her Rehabilitation Act claim should be
dismissed because it is unexhausted and not reasonably
related to her EEOC mental disability claim.  In making
this determination, the Court looks to whether Plaintiff
has alleged (1) a claim that "would fall within the scope
of the EEOC investigation which can reasonably be expected
to grow out of the charge of discrimination"; (2)
retaliation; or (3) "further incidents of discrimination

21

carried out in precisely the same manner alleged in the EEOC charge." Butts, 990 F.2d at 1402-03.

There is no question that Plaintiff filed an EEO complaint of discrimination on October 5, 2006, but that complaint does not specify any disability that allegedly resulted in Plaintiff's removal. On October 30, 2006, the Postal Service delineated the scope of its investigation in a form titled "Acceptance for Investigation." This form indicated that the scope of investigation would include "only" discrimination based on Retaliation (for prior EEO activity) and Mental disability," and gave Plaintiff seven days to object to this statement of issues. No evidence has been submitted that she did so.

Plaintiff did not allege discrimination on the basis of a physical disability during the administrative process, any claim on this basis will only survive if it is "reasonably related" to her EEOC charge of discrimination on the basis of a mental disability. Of the three exceptions to the exhaustion rule, the first is the only one that is relevant. This exception applies where "despite the claimant's having failed to specify the precise charge, the EEOC likely would have investigated the

22

conduct complained of anyway." Pemrick v. Stracher, 67 F.

Supp. 2d 159, 170 (E.D.N.Y. 1999). A recent decision has

held that Title VII claims for race, gender, and disability

discrimination were not administratively exhausted where

the plaintiff's EEO complaint alleged only national

original discrimination. DiProjetto v. Morris Protective

Svc., 489 F. Supp. 2d 305, 307-08 (W.D.N.Y. 2007), aff'd,

306 Fed. Appx. 687 (2d Cir. 2009) (summary order).

Schwertfager v. City of Boynton Beach, 42 F. Supp. 2d 1347

(S.D. Fla. 1999) addressed an ADA case involving claims of

discrimination on the basis of physical and mental

disability. The court found the mental disability claim

unexhausted because it was not included in the plaintiff's

EEOC complaint. Id. at 1355 n.7. The claim for

discrimination on the basis of Plaintiff's back injury is

dismissed as unexhausted.


        In addition, the first step of the McDonnell

Douglas test requires the Plaintiff to make out a prima

facie claim of discrimination. Plaintiff must show that

"(1) she is a handicapped person under the Act; (2) she is

otherwise qualified to perform her job; (3) she was

discharged because of her handicap; and (4) the employee is

a recipient of Federal financial assistance." Heilwell v.

Mount Sinai Hosp., 32 F.3d 718, 722 (2d Cir. 1994)
(citations omitted).

The Rehabilitation Act defines "an individual
with a disability" as one who (i) has "a physical or mental
impairment which substantially limits one or more major
life activities of such individual"; (ii) has "a record of
such an impairment"; or (iii) is "regarded as having such
an impairment."  29 U.S.C. § 705(20)(B); 42 U.S.C. §
12102(1).  Plaintiff thus must show that she suffers from a
physical or mental impairment, identify a "major life
activity . . . of central importance to daily life" that is
impaired, and show that her impairment "substantially
limits" that major life activity.  Weixel v. Bd. of Educ.,
287 F.3d 138, 147 (2d Cir. 2002).

The Postal Service does not dispute that Bethea's
back injury, which kept her out of work for a period of
time and limited her ability to lift heavy objects, is a
physical impairment.  The next question is whether the
impairment affects a "major life activity."  Under the
Rehabilitation Act, a major life activity "means functions
such as caring for one's self, performing manual tasks,
walking, seeing, hearing, speaking, breathing, learning,

24

and working." 45 C.F.R. § 84.3(j)(2)(ii). The Second
Circuit has identified others to include "sitting,
standing, lifting, or reaching." Ryan v. Grae & Rybicki,
P.C., 135 F.3d 867, 870 (2d Cir. 1998) (ADA case).
Plaintiff's back condition has prevented her from lifting
70 pounds, the requirement for a Postal Service
Distribution Clerk, the Postal Service has assumed for the
purposes of this motion that Plaintiff's back injury
affects the major life activities of working, lifting, and
performing manual tasks.

Plaintiff has not demonstrated that a major life
activity was substantially limited. The regulations define
this term as follows:

> (i) Unable to perform a major life activity that
> the average person in the general population can
> perform; or

> (ii) Significantly restricted as to the
> condition, manner or duration under which an
> individual can perform a particular major life
> activity as compared to the condition, manner, or
> duration under which the average person in the
> general population can perform that same major
> life activity.

29 C.F.R. § 1630.2(j)(1). The regulations further provide:

25

(2) The following factors should be considered in
determining whether an individual is
substantially limited in a major life activity;

(i) The nature and severity of the impairment;

(ii) The duration or expected duration of the
impairment; and

(iii) The permanent or long term impact, or the
expected permanent or long term impact of or
resulting from the impairment.

29 C.F.R. § 1630.2(j)(2). Here, Bethea was not

substantially limited insofar as work is concerned because

the only task that she was not able to perform fully was

lifting 70 pounds. (Q: "Putting the weight aside, was

there anything else about your job that you weren't able to

do? A: No, because I was just really doing window

work."). The regulations are clear that "[t]he inability

perform a single, particular job does not constitute a

substantial limitation in the major life activity of

working." 29 C.F.R. § 1630.2(j)(3)(1).


Insofar as lifting is concerned, although

Plaintiff testified that her back condition sometimes kept

her out of work, the evidence is clear that her doctors

allowed her to lift a reduced amount of weight when she

went back to work, sometimes as high as 30 pounds.


26

Accordingly, her lifting impairment was not severe, and not of sufficient duration to qualify as a "substantial limitation."  Much the same goes for the cooking and laundry done by Plaintiff's sister.  In fact, Plaintiff testified at her deposition that she often would accompany her sister for food shopping.  And even though her sister helped her out of bed on some occasions, Plaintiff testified that "it wasn't like that all the time.  It just was like that sometimes."  This is hardly a "permanent or long-term impact," in the words of the regulation.

Plaintiff thus is not disabled for the purposes of the Rehabilitation Act.  But even if she were, she cannot make a prima facie claim because she cannot show that she was discharged as a result of her disability.  In fact, the undisputed evidence in this case is to the contrary.  As Plaintiff testified at her deposition, the Postal Service accommodated her back problems and never once disobeyed a physician's order restricting the amount of weight she could lift.  There is no evidence in the record to infer that Plaintiff was fired as a result of her back injury.

Finally, the Postal Service is still entitled to summary judgment because it can articulate a legitimate, non-discriminatory reason for the Plaintiff's removal. See James v. New York Racing Ass'n, 233 F.3d 149, 154 (2d Cir. 2000) (where employer articulates a non-discriminatory reason for its actions, the presumption of discrimination is eliminated and "the employer will be entitled to summary judgment . . . unless the plaintiff can point to evidence that reasonably supports a finding of prohibited discrimination").

Plaintiff's Notice of Removal dated August 10, 2006, contains explicit detail of the reasons for her removal.  Postal inspectors received a telephone call from Overby sometime after 5:30 p.m. on June 22, 2006, reporting that Plaintiff had threatened her.  Section 665.24 of the ELM states that "it is the unequivocal policy of the Postal Service that there must be no tolerance of violence by anyone at any level of the Postal Service."  Based on the evidence before, including a sworn statement from Overby that is annexed to Plaintiff's complaint, Granderson reasonably concluded that Plaintiff had violated the Postal Service's zero tolerance policy.

Bethea was also absent from work without leave from June 27, 2006, through June 30, 2006.  On June 23, 2006, the morning of the incident, Granderson placed her on emergency placement and directed her to leave the premises. On June 27, 2006, after a pre-disciplinary interview, Granderson ordered Plaintiff to return to work.  It is undisputed that Plaintiff disobeyed this directive.

Section 665.42 of the ELM provides that absence without permission results in the employee being "placed in nonpay status for the period of such absence" and "may be the basis for disciplinary action."  Section 665.41 requires employees to be "regular in attendance" and warns that failure to adhere to this rule "may result in disciplinary action, including removal from the Postal Service."  Section 665.15 provides that "[e]mployees must obey the instructions of their superiors."  Plaintiff has claimed that she was waiting for written notice to return to work.  This is not just cause to disobey a supervisor's order.

Finally, Plaintiff was late to work eleven times during the period from May 26, 2006, through July 12, 2006. In fact, Granderson called a pre-disciplinary interview

29

with Plaintiff about her tardiness on June 20, 2006—two days before the incident involving Overby. During this interview, Granderson noted that Plaintiff had been given an oral discussion of her attendance back in April 2006, and that she had accumulated eight previous latenesses. Plaintiff said nothing in her defense. Granderson suggested that Plaintiff perhaps could be covered under FMLA and gave her the appropriate paperwork for submission. Despite a warning of forthcoming disciplinary action, Plaintiff was late to work again on July 6, July 7, July 10, and July 12, 2006.

On July 12, 2006, Granderson conducted a pre-disciplinary interview with Plaintiff. Granderson noted that she had offered to change Plaintiff's tour in an effort to cure the lateness problem, but Plaintiff had refused. The union representative then suggested that Plaintiff might be covered under FMLA—just as Granderson had on June 20. Granderson said that she had given Plaintiff a phone number for the FMLA office, to which Plaintiff responded: "I know someone had called there and you gave them a lot of wrong information." At that point, Granderson ended the interview.

There is no dispute that Plaintiff was late to work eleven times over a six-week period. Once again, Section 665.41 of the ELM requires employees to be "regular in attendance" and warns that failure to adhere to this rule "may result in disciplinary action, including removal from the Postal Service."  When Granderson attempted to change Plaintiff's tour to assist her with this problem, Plaintiff spurned Granderson's assistance.

Accordingly, Defendant has articulated legitimate, non-discriminatory reasons for discharging Plaintiff, and there is no evidence in the record that these reasons were pretextual.

**The Mental Disability or Use of
"Psych Meds" Claim is Dismissed**

Plaintiff alleges that the Postal Service removed her because of her use of "psych meds," which the Defendant has construed as referring to a mental impairment.

To state a prima facie claim for discrimination under the Rehabilitation Act, a plaintiff must show, inter

31

alia, that she is disabled for purposes of the Act, and
that the agency removed her because of her disability.

Plaintiff's depression did not substantially
limit a major life activity.  Plaintiff testified at
deposition that her depression kept her isolated from her
colleagues, but she could "do the job."  She also testified
that after her removal from the Postal Service, she
obtained employment at amNew York distributing newspapers
and even worked for the Princeton Review for one day before
the Board of Education informed her that she probably would
not be able to continue in the job because of the
circumstances of her dismissal from the Postal Service.
Dr. Grunebaum indicated in 2001 and 2002 that Plaintiff was
not incapacitated.  Dr. Roda, who saw Plaintiff one day
before her Notice of Removal was issued, diagnosed
Plaintiff with depression but did not think her condition
warranted medication.  As with her back ailment, Plaintiff
has not identified a "permanent or long-term impact" on any
major life activity, and thus she is not an "individual
with a disability" under the Rehabilitation Act.

Even if Plaintiff were considered "disabled,"
there is no credible evidence that she was removed because

32

of her disability.  Giving Bethea the benefit of the doubt
and assuming that her eleven latenesses were somehow
related to her mental condition, she admits that Granderson
actually volunteered to change her tour to solve this
problem.  Plaintiff's violation of the zero tolerance
policy and her four absences without leave had nothing to
do with her depression.  Plaintiff's explanation for
disobeying Granderson's directive to return to work was
that she wanted the directive in writing.

Finally, the Postal Service has articulated three
legitimate, non-discriminatory reasons for removing
Plaintiff from employment as set forth above.

Defendant is granted summary judgment on
Plaintiff's Rehabilitation Act claim.

## The Retaliation Claim is Dismissed

Plaintiff alleges a claim of retaliation for her
prior EEO activity.  Retaliation claims are analyzed under
the three-step McDonnell Douglas framework.  See Treglia v.
Town of Manlius, 313 F.3d 713, 719 (2d Cir. 2002) (citing
Weixel, 287 F.3d at 148).  To establish a prima facie

claim, Plaintiff must show that (1) she "engaged in
protected activity," (2) that Defendant "was aware of this
activity," (3) that Defendant "took adverse action against
the Plaintiff," and (4) "a causal connection exists between
the protected activity and the adverse action, i.e., that a
retaliatory motive played a part in the adverse employment
action." Reg'l Econ. Cmty. Action Program, Inc. v. City of
Middletown, 294 F.3d 35, 54 (2d Cir. 2002).  While the
first three prongs are not in dispute, Plaintiff fails to
pass the causal connection test.

Here, there is no direct evidence of retaliation
in the record.  Plaintiff filed ten EEO claims between
October 8, 1997, and March 29, 2006, inclusive.
Nevertheless, the Postal Service accommodated Bethea's
request for a transfer from the Hell Gate to the Madison
Square station, and then again from Madison Square to
Columbus Circle.  Plaintiff then filed seven EEO complaints
that concerned Granderson.  The Postal Service then
accommodated Plaintiff's back problems while she was
employed at the Columbus Circle station, and Granderson
offered to change Plaintiff's tour to resolve her tardiness
problem.  There is no evidence of retaliatory conduct that
has been adduced.

34

Moreover, in and of itself, Plaintiff's removal
was not close enough in time to her 2006 EEO complaints to
indicate a causal connection.  The Second Circuit "has not
drawn a bright line to define the outer limits beyond which
a temporal relationship is too attenuated to establish a
causal relationship between the exercise of a federal
constitutional right and an allegedly retaliatory action."
Gorman-Bakos v. Cornell Co-op Extension, 252 F.3d 545, 554
(2d Cir. 2001).  Nevertheless, one court had held that "a
passage of two months between the protected activity and
the adverse employment action seems to be the dividing
line."  Cunningham v. Consol. Edison, Inc., No. 03 Civ.
3522 (CPS), 2006 WL 842914, at *19 (E.D.N.Y. Mar. 28, 2006)
(citing cases).  Of course, depending on the facts of a
particular case, periods longer than two months may be
sufficient to establish a causal connection.  See Grant v.
Bethlehem Steel Corp., 622 F.2d 43, 45-46 (2d Cir. 1980)
(eight-month gap between EEOC complaint and retaliatory
action suggested a causal relationship).

Here, given the Postal Service's efforts to
accommodate Bethea's back problems and solve her tardiness
issue, the passage of over four months between Plaintiff's

35

last EEO complaint and her notice of removal is too long,
in and of itself, to suggest a causal relationship between
her removal and any of her prior EEO activity.  <u>See</u>
<u>Hollander v. Am. Cyanamid Co.</u>, 895 F.2d 80, 85-86 (2d Cir.
1990) (passage of three months too long to suggest a causal
relationship between complaint and failure to provide good
recommendation).  But even if Plaintiff has established a
prima facie case of retaliation, the Postal Service has
articulated legitimate, non-discriminatory reasons for
removing Plaintiff, as discussed above.

        Defendant is granted summary judgment on the
retaliation claim.

## **The Hostile Work Environment Claim is Dismissed**

        Plaintiff has asserted a hostile work environment
claim in her complaint.  This claim, however, is
unexhausted under the authority discussed above.  The claim
does not appear anywhere in the form EEO complaint, and
Plaintiff did not object to the Acceptance for
Investigation form discussed earlier, which made no mention
of such a claim.  Nor was the claim addressed in the
administrative law judge's final decision.  Accordingly,

this claim is dismissible at the threshold because it was
not properly exhausted and "not reasonably related" to
Plaintiff's discrimination and retaliation claims.  See
Mathirampuzha v. Potter, 548 F.3d 70, 76 (2d Cir. 2008)
(finding hostile work environment claim unexhausted where
EEO complaint did not allege any ongoing harassment).

        Even if a hostile work environment claim were to
be inferred from Plaintiff's administrative submissions, it
has not been sustained.  To maintain such a claim, a
plaintiff must demonstrate:  "(1) that the workplace was
permeated with discriminatory intimidation that was
sufficiently severe or pervasive to alter the conditions of
. . . her work environment, and (2) that a specific basis
exists for imputing the conduct that created the hostile
environment to the employer."  Petrosino v. Bell Atl., 385
F.3d 210, 221 (2d Cir. 2004) (citations and internal
quotation marks omitted).  Plaintiff must offer facts to
demonstrate that the allegedly hostile conduct was based on
her protected characteristic.  See Brown v. Henderson, 257
F.3d 246, 252 (2d Cir. 2001).  In assessing a hostile work
environment claim, courts must consider a variety of
factors, including the frequency and severity of the
discriminatory conduct, whether such conduct is physically

threatening or humiliating, or merely an offensive
utterance, and whether the conduct unreasonably interferes
with the plaintiff's work performance.  See Faragher v.
City of Boca Raton, 524 U.S. 775, 787-88 (1998).


        "As a general matter, isolated remarks or
occasional episodes of harassment will not merit relief
under Title VII; in order to be actionable, the incidents
of harassment must occur in concert or with a regularity
that can reasonably be termed pervasive."  Quinn v. Green
Tree Credit Corp., 159 F.3d 759, 768 (2d Cir. 1998)
(citations and internal quotation marks omitted).  Thus, a
plaintiff alleging a hostile work environment "must
demonstrate either that a single incident was
extraordinarily severe, or that a series of incidents were
'sufficiently continuous and concerted' to have altered the
conditions of her working environment."  Cruz v. Coach
Stores, Inc., 202 F.3d 560, 570 (2d Cir. 2000) (citations
omitted); see also Kotcher v. Rosa & Sullivan Appliance
Center, 957 F.2d 59, 62 (2d Cir. 1992) ("The incidents must
be repeated and continuous; isolated acts or occasional
episodes will not merit relief."); Hall v. S. Cent. Conn.
Reg'l Wate Auth., 28 F. Supp.2d 76, 86 (D. Conn. 1998)
("[T]he plaintiff must show that the workplace was

                          38

permeated with discriminatory intimidation, ridicule and insult that was sufficiently severe or pervasive to alter the conditions of her employment.").

Plaintiff testified at deposition that her colleagues teased her because of her mental disability and her need for medication. She admitted that it was not the norm for her co-workers, with the exception of Overby and one other co-worker who is now retired. (Plaintiff claims that Granderson sometimes used the work "special." ("She would do teasing, but sometimes they would tease customers, so sometimes it was like, "Look at that customer. That customer is special. That customer needs her medication.")). Plaintiff also testified that Granderson called her "special" on June 22, 2006. But Plaintiff also testified that Granderson would speak to her even when Plaintiff's other colleagues would not speak to her. ("[B]ut when I would come to work, and they wouldn't speak to me, and stuff like that, but Ms. Granderson would speak and I would speak to her. Even though, you know, we had our differences and stuff like that. If I said hello to her, she did say hello to me.").

39

None of these incidents are sufficiently severe individually or in combination to constitute a hostile work environment. "Simple teasing, offhand comments, or isolated incidents of offensive conduct (unless extremely serious) will not support a claim of discriminatory harassment." Petrosino, 385 F.3d at 223. In fact, Plaintiff has admitted that the testing "wasn't like a norm" for other co-workers.

Even if Plaintiff's hostile work environment claim were properly exhausted, the claim is dismissed.

**Conclusion**

Based upon the facts and conclusions set forth above, the motion of the Postal Service is granted and the amended complaint is dismissed with prejudice and without costs.

Submit judgment on notice.

It is so ordered.

**New York, NY**
2-5-10

40

February      , 2010                         ROBERT W. SWEET
                                                  U.S.D.J.